IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AIR LIQUIDE INDUSTRIAL U.S. LP,

                Plaintiff,

   v.

BUTTERBALL, LLC,

                Defendant.

CIVIL ACTION
NO. 12-6390

## OPINION

**Slomsky, J.**                                                          **July 3, 2013**

## I.    INTRODUCTION

Before the Court is Defendant Butterball, LLC's Motion to Transfer Venue to the United States District Court for the Eastern District of North Carolina under 28 U.S.C. § 1404(a).[1] (Doc. No. 5.)

On November 13, 2012, Plaintiff Air Liquide Industrial U.S. LP ("Plaintiff") filed a Complaint against Defendant Butterball, LLC ("Defendant") in the Eastern District of Pennsylvania. (Doc. No. 1.) In the Complaint, Plaintiff alleges that Defendant breached a 1999 contract that required Plaintiff to deliver liquid nitrogen to Defendant. (Id.)

On March 11, 2013, Defendant filed the Motion to Transfer Venue contending that the public and private interest factors set forth in Jumara v. State Farm Insurance Co., 55 F.3d 873

---

[1] Defendant titled its Motion as follows: "Motion to Transfer Venue and Motion to Consolidate or Dismiss to the United States District Court for the Eastern District of North Carolina." The latter part of the title refers to a Motion to Consolidate or Dismiss, but neither the Motion nor the accompanying brief clearly elucidates the nature of the consolidation or dismissal sought. The Court assumes that the request to consolidate and/or dismiss is subsumed within the request to transfer venue and that no further discussion of these requests is necessary.

(3d Cir. 1995), support the transfer of this case to the United States District Court for the Eastern District of North Carolina.  (Doc. No. 5.)

The central issue in dispute is whether the facts support such a transfer under the <u>Jumara</u> factors.  For reasons that follow, Defendant's Motion to Transfer Venue to the United States District Court for the Eastern District of North Carolina will be denied.

## II.   FACTUAL BACKGROUND

Plaintiff is a Delaware LLC with its principal place of business in Houston, Texas.  (Doc. No. 1 at 2.)  Plaintiff supplies industrial gases, including liquid nitrogen, and associated services to various industries, including food manufacturers.  (<u>Id.</u>)  Plaintiff is a multinational company with over 200 locations in the United States.  (Doc. No. 5 at 13.)  Plaintiff has offices in Florida, Texas, North Carolina, and Pennsylvania.  (<u>Id.</u> at 14.)  Plaintiff's predecessor, Messer Griesheim Industries, Inc. ("Plaintiff's predecessor"), was a Delaware Corporation with its corporate headquarters in Malvern, Pennsylvania.  (Doc. No. 10-1 at 3.)

Defendant is a North Carolina LLC with its principal place of business in Garner, North Carolina.  (<u>Id.</u>)  Defendant's offices and plants are located in North Carolina.  (<u>Id.</u> at 15.)  Defendant is the largest turkey producer in the United States.  (<u>Id.</u> at 14.)  Defendant's predecessor was Carolina Turkeys LLC ("Defendant's predecessor").  (Doc. No. 10 at 3.)

On December 6, 1999, Plaintiff's predecessor entered into a Bulk Services Agreement ("the Agreement") with Defendant's predecessor.  (Doc. No. 10-1 at 3.)  The Agreement was negotiated and executed in Pennsylvania and provided that it would be governed by Pennsylvania law.[2]  (Doc. No. 1 at 4.)  It was signed by Charles S. Matasic, the Vice President of

---

[2]  The Agreement provides in relevant part:

Plaintiff's predecessor and a resident of West Chester, Pennsylvania.  (Doc. No. 10-1 at 3.)  The

Vice President of Operations of Defendant's predecessor executed the Agreement on behalf of

Defendant's predecessor.[3]  (Doc. No. 1-4 at 4.)

      The Agreement designated Plaintiff's predecessor as the liquid nitrogen supplier for the

North Carolina facilities of Defendant's predecessor.  (Id.)  Under the Agreement, all production

and delivery of liquid nitrogen was to occur "in or within close proximity to the state of North

Carolina."  (Doc. No. 5 at 12.)  The Agreement included an initial expiration date of December 6,

2004, and expressly provided for automatic annual renewal thereafter.  (Doc. No. 1 at 3.)  With

respect to termination, the Agreement provided that either party could terminate "by giving not

less than 120 days prior written notice to the other party."[4]  (Doc. No. 1 at 4.)  Subsequent to the

---

> This instrument constitutes the entire Agreement between the parties and is to be
> interpreted in accordance with the laws of the Commonwealth of Pennsylvania.
> No terms and conditions in any purchase order of buyer issued or purported to be
> issued with respect to the sale of the Product(s) shall vary the terms hereof and all
> of such provisions are hereby objected to.  No modification or waiver of this
> Agreement shall bind Seller unless in writing and signed and accepted by an
> executive officer of Seller.

(Doc. No. 1-4 at 4.)

[3]  The Court is aware that the Vice President of Operations executed the Agreement on behalf of
Defendant's predecessor because it is attached to Plaintiff's Complaint as Exhibit "A".  (Doc.
No. 1-4 at 3.)  The signature on the Agreement is illegible and the signer's name is unclear.

[4]  The Agreement again provides in relevant part:

> The initial term of this Agreement shall be 5 years ("Initial Term") from the date
> of first delivery of Product(s) to or by the Equipment (as defined below), and shall
> remain in force from year to year after the expiration of the Initial Term unless
> terminated as provided below . . . . Either party may terminate this Agreement
> effective on the expiration of the Initial Term or on any anniversary of the
> expiration date thereafter by giving not less than 120 days prior written notice to
> the other party.

(Doc. No. 1-4 at 2.)

execution of the Agreement between the predecessors, Plaintiff and Defendant purchased their predecessors.  (Doc. No. 10-1 at 3.)  Plaintiff continued to supply Defendant with liquid nitrogen under the Agreement until September 2012.  (Doc. No. 1 at 7.)

The Agreement was amended several times since it went into effect in 1999.  (Doc. No. 10-1 at 3.)  The amendment relevant to the breach of contract alleged here was executed on July 12, 2010.  (Id.)  This amendment extended the expiration date of the Agreement from August 15, 2011 to October 15, 2012.  (Id.)  The amendment also modified pricing and stated that all other terms of the Agreement were to remain in effect.  (Id. at 4.)  Vincent Dominianni, the Northeast Regional Manager at the East Norriton, Pennsylvania office of Plaintiff, executed the July 2010 amendment on its behalf.  (Id. at 3.)

While the Agreement was in effect, there were a considerable number of contacts between the North Carolina offices of Defendant and the North Carolina, Florida, and Pennsylvania offices of Plaintiff.  (Doc. No. 5-1 at 3.)  Since the beginning of the relationship between the parties, Defendant consistently communicated with the Pennsylvania office of Plaintiff regarding the Agreement and related billing invoices.[5]  (Doc. No. 10-1 at 5.)

On November 13, 2012, Plaintiff filed the Complaint against Defendant in this Court alleging that Defendant breached the termination and automatic renewal provisions in the Agreement.  (Doc. No. 1.)  Specifically, Plaintiff contends that Defendant breached the Agreement by failing to provide written notice to Plaintiff at least 120 days prior to termination.  (Doc. No. 1 at 7.)  The termination date was October 15, 2012.  (Id.)  On September 17, 2012,

---

[5]  Plaintiff asserts that since 2007, about thirty invoices were sent each month to Defendant from the Pennsylvania office of Plaintiff.  (Doc. No. 10-1 at 5.)

Defendant advised Plaintiff that the Agreement would be terminated as of October 14, 2012, which was far less than the required 120 day notice under the Agreement.[6]  (Doc. No. 1-8 at 3.)

Subsequent to the alleged breach of the Agreement in September 2012, Defendant repeatedly communicated with the Pennsylvania office of Plaintiff regarding the Agreement and its amendments.  (Doc. No. 10-1 at 4.)  Judith Shank, Defendant's Corporate Purchasing Manager, corresponded with two Pennsylvania based employees of Plaintiff concerning the alleged breach.[7]  (Id.)  Suzanne Griffin, the Vice President and General Counsel of Defendant, also communicated with the Pennsylvania office of Plaintiff regarding the Agreement and its amendments.  (Id.)

On March 11, 2013, Defendant filed the instant Motion to Transfer Venue, asserting that the public and private interest factors identified in Jumara v. State Farm Insurance Co., 55 F.3d 873 (3d Cir. 1995), support the transfer of this case to the United States District Court for the Eastern District of North Carolina.  (Doc. No. 5.)  Defendant argues that the "obvious and natural venue" for this case is the Eastern District of North Carolina because performance under the Agreement and the alleged breach occurred in North Carolina.  (Doc. No. 5 at 3.)

In response, Plaintiff argues that Defendant failed to meet its burden to justify a change of venue.  (Doc. No. 10 at 5.)  Plaintiff maintains that its chosen forum in the Eastern District of Pennsylvania should not be disturbed because it is the location of the only northeast regional office of Plaintiff, and it is the place where the Agreement was negotiated, signed, amended, and repeatedly discussed.  (Id. at 15.)

---

[6]  In an email to Richard Cassano, a Pennsylvania based employee of Plaintiff, Defendant advised that it would be using a different company to supply the liquid nitrogen.  (Doc. No. 1-8 at 3.)

[7]  Shank sent correspondence to Cassano, the Pennsylvania based employee, and Dominianni, the Northeast Regional Manager of Plaintiff.  (Doc. No. 10-1 at 4.)

### III.    STANDARD OF REVIEW

Defendant has moved to transfer this matter to the United States District Court for the Eastern District of North Carolina.  A district court may transfer a case pursuant to 28 U.S.C. § 1404(a) "for the convenience of parties and witnesses, in the interest of justice" to "any other district or division where it might have been brought or to any district or division to which all parties have consented."

A moving party seeking to transfer a case bears the burden of establishing that: (1) venue is proper in the transferee forum; (2) transfer is more convenient for the parties and witnesses; and (3) transfer would be in the interest of justice.  Lehr v. Stryker Corp., No. 09–2989, 2010 WL 3069633, at *3 (E.D. Pa. Aug. 4, 2010).  While there is ordinarily a strong presumption in favor of a plaintiff's choice of forum, a court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir.1995); see also Hollander v. Hospira, Inc., No. 10–235, 2010 WL 4751669, at *3 (E.D. Pa. Nov. 22, 2010) (granting a motion to transfer because justice was best served by transfer); Inaganti v. Columbia Props. Harrisburg, LLC, No. 10–1651, 2010 WL 2471671, at *2 (E.D. Pa. June 15, 2010) (recognizing that § 1404(a) transfer analysis is flexible and must be determined on the unique facts of each case).

The burden is on the moving party to show that "all relevant things considered, the case would be better off transferred to another district."  In re United States, 273 F.3d 380, 388 (3d Cir. 2001) (internal quotations and citation omitted).

In Jumara, the Third Circuit set forth "private interest" and "public interest" factors that a district court may consider in deciding a motion to transfer. 55 F.3d at 879–80.  First, the "private interests" established in Jumara include:

> [P]laintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879 (internal citations omitted).  Second, the "public interests" discussed in Jumara include:

> [T]he enforceability of the judgment, practical considerations that could make the trial easy, expeditious or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879–80 (internal citations omitted).

## IV.   ANALYSIS

Defendant moves to transfer venue to the United States District Court for the Eastern District of North Carolina because production and delivery under the Agreement, as well as the alleged breach, occurred in North Carolina.  (Doc. No. 5 at 1.)  Plaintiff opposes Defendant's Motion, maintaining that the choice of forum in the Eastern District of Pennsylvania should not be disturbed because the Agreement was negotiated, executed, and amended in Pennsylvania. Plaintiff further avers that by ignoring the considerable amount of communication with the Pennsylvania office of Plaintiff and by citing irrelevant North Carolina contacts, Defendant has failed to meet its burden to show that transfer of venue is appropriate.

### A.   Jumara Private Interest Factors

Under Jumara, there are six private interest factors.  The Court will address five of the six factors below.  The parties agree that the sixth factor concerning the location of books and records is a neutral one and not dispositive of the Motion to Transfer Venue.

### 1.     Plaintiff's Forum Preference

The first <u>Jumara</u> private interest factor is the forum preference of a plaintiff as manifested in the original choice of forum.  55 F.3d at 879.  In general, a court should defer to the choice of forum of a plaintiff.  <u>Id.</u> at 880.  However, a plaintiff's choice is given less weight if none of the operative facts central to the action occurred in the forum.  <u>Nat'l Mortgage Network, Inc. v. Home Equity Ctrs., Inc.</u>, 683 F. Supp. 116, 119 (E.D. Pa. 1988).  Defendant argues that all critical facts related to this action occurred outside this District because Plaintiff contracted to perform services in North Carolina rather than Pennsylvania.[8]  (Doc. No. 5 at 8.)  Defendant further argues that Plaintiff's chosen venue should be given less weight because the alleged breach of contract that gave rise to the claim occurred at the North Carolina facility of Defendant.  (<u>Id.</u> at 9.)

Here, the Agreement was executed by Plaintiff's predecessor, which was a Pennsylvania citizen.[9]  (Doc. No. 10 at 8.)  Defendant frequently communicated with Pennsylvania employees of Plaintiff regarding the Agreement and the amendments.  (Doc. No. 10-1 at 5.)  Furthermore, Pennsylvania law governs the Agreement.  (<u>Id.</u> at 3.)  Since essential facts giving rise to the claim occurred in Pennsylvania, the first <u>Jumara</u> factor weighs against transfer.

### 2.     Defendant's Forum Preference

The second <u>Jumara</u> private interest factor is the forum preference of the defendant.  55 F.3d at 879.  Defendant seeks transfer of this case to the Eastern District of North Carolina because its headquarters and processing plants are in North Carolina.  However, transfer should

---

[8]  According to Defendant, gas was shipped from Plaintiff's North Carolina, South Carolina, and Virginia facilities to Defendant's Mount Olive, North Carolina facility and no production or delivery of gas occurred in Pennsylvania.  (Doc. No. 5 at 12.)

[9]  Plaintiff's predecessor had its corporate headquarters in Malvern, Pennsylvania. (Doc. No. 10-1 at 3.)

not be granted on the grounds of the forum preference of a defendant where it "would merely shift the inconvenience from the defendant to the plaintiff." Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distrib., No. 07-4037, 2008 WL 269487, at *3 (E.D. Pa. Jan. 31, 2008) (quoting Aquarium Pharma., Inc. v. Indus. Pressing & Packaging, Inc., 358 F. Supp. 441, 445 (E.D. Pa. 1973)). North Carolina is a more convenient venue for Defendant and Pennsylvania is a more convenient venue for Plaintiff. Transfer to North Carolina would only shift inconvenience to Plaintiff. Accordingly, this factor weighs against transfer.

### 3.    Where the Claim Arose

The third Jumara private interest factor requires a court to evaluate where the claim arose. 55 F.3d at 879. When the majority of acts giving rise to a claim take place in another forum, this factor weighs in favor of transfer. Hamilton v. Nochimson, No. 09-2196, 2009 WL 2195138, at *3 (E.D. Pa. July 21, 2009). However, in determining where the claim arose in a breach of contract case, a court looks to "the place of contract negotiation/execution, performance, or breach." CoActiv Capital Partners, Inc. v. Feathers, No. 08-5506, 2009 WL 1911673, at *5 (E.D. Pa. July 1, 2009).

As previously discussed, this case is based on an alleged breach of contract. While the place of performance of the Agreement was in North Carolina, the Agreement was negotiated, executed and amended in Pennsylvania. In this situation, it appears to be a factual question as to where the breach occurred. Merely giving notice in an email sent from North Carolina to Pennsylvania that the contract would be terminated in violation of the 120 day notice provision does not necessarily mean that the contract was breached in North Carolina. The place where the breach, if any, occurred is a factual matter for the fact-finder to determine. Despite the fact that

no gas came from Pennsylvania, the breach or claim may have arisen in Pennsylvania, and this factor concerning where the claim arose appears to weigh against transfer to North Carolina.

### 4.      Convenience of the Parties

The fourth Jumara private interest factor is the relative convenience of the parties. Convenience is only relevant as it relates to Defendant's "physical and financial condition and to the extent that witnesses or records would be unavailable or unable to be produced in [Plaintiff's] chosen forum." 55 F.3d at 879.  Plaintiff's chosen forum does not hinder the production of witnesses and records.  Plaintiff is a multinational company with more than 200 locations in the United States and Defendant is the largest turkey producer in the United States.  Neither party will be financially or physically burdened by a grant or denial of transfer.  (Doc. No. 5 at 13; Doc. No. 10 at 9.)  Thus, this factor weighs against transfer.

### 5.      Convenience of Witnesses

The fifth Jumara private interest factor concerns the location of the witnesses, but only to the extent that witnesses may actually be unavailable for trial in one of the fora.  55 F.3d at 879. Party witnesses are presumed to be willing to testify in either forum despite inconvenience.  Toll Bros., Inc. v. Nationwide Prop. & Cas. Ins. Co., No. 05-1191, 2005 WL 2600207, at *4 (E.D. Pa. Oct. 13, 2005).  Consequently, the convenience of non-party witnesses is the main focus of this factor.  Defendant is not aware of the location of any non-party witness.  (Doc. No. 5 at 14.)  The only non-party witness identified by Plaintiff resides in the Eastern District of Pennsylvania.[10] (Doc. No. 10 at 11.)  This witness may be subpoenaed in the Eastern District of Pennsylvania. Accordingly, this factor weighs against transfer.

---

[10]  The non-party witness is Charles S. Matasic, who signed the Agreement on behalf of Plaintiff's predecessor.  (Doc. No. 10-1 at 3.)  He is located in West Chester, Pennsylvania.  (Id.)

B. **Jumara Public Interest Factors**

There are six Jumara public interest factors. The Court will address four of the six factors below. The two factors concerning the enforceability of judgment and public policies of the fora will not be addressed because these factors are neutral in this case.

1. **Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive**

The first Jumara public interest factor is practical considerations that could make the trial easy, expeditious, or inexpensive. 55 F.3d at 879. Defendant has failed to assert facts to demonstrate that transfer to the Eastern District of North Carolina would make the trial easier, quicker, or less expensive. Therefore, this factor weighs against transfer.

2. **Court Congestion**

The second Jumara public interest factor is the relative administrative difficulty in the two fora resulting from court congestion. 55 F.3d at 879. Defendant argues that judges in the Eastern District of Pennsylvania have a considerably higher caseload than judges in the Eastern District of North Carolina. (Doc. No. 5 at 13.) However, it is apparent that "the Eastern District of Pennsylvania's high number of cases arises out of its large number of multi-district litigations and does not indicate that it is significantly more congested." Lehr, 2010 WL 3069633, at *6 (quoting Hamilton v. Nochimson, No. 09-2196, 2009 WL 2195138, at *5 n. 1 (E.D. Pa. July 21, 2009)). This Court can readily manage this case on its docket. Consequently, Defendant's argument fails and this factor weighs against transfer.

3. **Local Interest in Deciding Local Controversies**

The third Jumara public interest factor is the local interest in deciding local controversies in the home forum. 55 F.3d at 879. Defendant argues that North Carolina will be more affected by the outcome of the case because manufacture and delivery of liquid nitrogen under the

Agreement occurred in North Carolina.  (Doc. No. 5 at 13.)  However, this case concerns

contract interpretation under Pennsylvania law, where the Agreement was negotiated, signed,

amended, and repeatedly discussed.  While it appears that both jurisdictions have a local

connection to this dispute, no extra burden will be placed on Pennsylvania citizens as jurors or

witnesses by litigating the case in the Eastern District of Pennsylvania.  As such, this factor

weighs against transfer.

### 4.      Familiarity of Trial Judge with Applicable State Law

The final Jumara public interest factor in this case is the familiarity of the trial judge with

applicable state law.  55 F.3d at 879.  Defendant argues this factor is neutral because this case

does not involve any issues unique to Pennsylvania law.  (Doc. No. 5 at 17.)  However, the

parties agree that Pennsylvania law governs the Agreement.  (Id; Doc. No. 10 at 1.)  A federal

judge sitting in the Eastern District of Pennsylvania is better suited to decide a case governed by

Pennsylvania law than a federal judge in the Eastern District of North Carolina.  See Mato v.

Window World, Inc., No. 10-7617, 2011 WL 710473, at *6 (E.D. Pa. Feb. 28, 2011) (finding the

Western District of North Carolina better equipped to interpret terms of an agreement governed

by North Carolina law)).  This factor therefore weighs against transfer to the Eastern District of

North Carolina.

## V.      CONCLUSION

After considering the relevant private and public Jumara factors, it is apparent for the

reasons set forth above that most factors weigh in favor of permitting this case to be litigated in

the Eastern District of Pennsylvania and denying Defendant's Motion to Transfer this case to the

Eastern District of North Carolina.  Accordingly, the Motion to Transfer Venue to the United

States District Court for the Eastern District of North Carolina will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AIR LIQUIDE INDUSTRIAL U.S. LP,

                    Plaintiff,

        v.                                              CIVIL ACTION
                                                        NO. 12-6390
BUTTERBALL, LLC,

                    Defendant.

## ORDER

**AND NOW**, this 3rd day of July 2013, upon consideration of Defendant Butterball, LLC's Motion to Transfer Venue and Motion to Consolidate or Dismiss to the United States District Court for the Eastern District of North Carolina (Doc. No. 5), Plaintiff Air Liquide Industrial U.S. LP's Brief in Opposition to Defendant's Motion to Transfer (Doc. No. 10), the arguments of counsel for parties at the hearing held on April 11, 2013, and in accordance with the Opinion of the Court issued this day, it is **ORDERED** that Defendant's Motion to Transfer Venue (Doc. No. 5) is **DENIED**.

                                        BY THE COURT:


                                        /s/ Joel H. Slomsky
                                        JOEL H. SLOMSKY, J.